1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANE DOE,<br><br>     Plaintiff,<br><br>  v.<br><br>LIFESTANCE HEALTH INC et al.,<br><br>     Defendants. | CASE NO. C23-1441-KKE<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

   Plaintiff Jane Doe, an adult mental health care patient, and TJ Carver, her therapist, engaged in a sexual romantic relationship while she was receiving treatment at Lifestance Health. Plaintiff now sues three Lifestance entities—Lifestance Health, Inc.; Lifestance Health, LLC; and Lifestance Health Group, Inc. (collectively, "Defendants")—alleging that Defendants are liable for Carver's conduct.  Doe asserts claims for vicarious liability, negligent supervision, hiring and retention, as well as breach of fiduciary duties, intentional infliction of emotional distress, and negligent infliction of emotional distress.

   Defendants move for summary judgment on all Plaintiff's claims.  Dkt. No. 19.  Because Doe raises material issues of fact with respect to whether Carver posed a risk of harm and whether Defendants knew or should have known about the risk he purportedly presented during his

employment, the Court grants in part and denies in part Defendants' motion for summary judgment.

## I.   BACKGROUND

### A.   Undisputed Facts

Lifestance is a publicly held company with multiple subsidiaries, including Lifestance Health, Inc. and Lifestance Health Group, Inc.[1]  Dkt. No. 20 ¶ 2.  In April 2021, Lifestance Health, Inc. ("Lifestance"), hired Carver as a Licensed Marriage and Family Therapist ("LMFT") at its Gig Harbor, Washington office.  *Id.* ¶ 5.  As an LMFT, Carver did not hold supervisory responsibilities, and no employees reported to him.  Dkt. No. 21 ¶ 3.

To be hired, Carver needed to pass a provider credentialing process, which included running his credentialing application, education, job history, social security number, and national provider identification number through a National Practitioner Database.  Dkt. No. 20 ¶ 6. Lifestance also verified Carver's educational background and ran his information through the System Award Management database for federal contractors and the Washington State Department of Health's database.  *Id.*  Carver passed the credentialing process, and his application raised no red flags.  *Id.*; Dkt. No. 20-1 at 4−6.  Lifestance also required Carver to complete its training process. Dkt. No. 20 ¶ 6.  Specifically, Carver received training on the prohibition against romantic relationships with patients, which is explained in the Code of Ethics of the American Association for Marriage and Family Therapy and the Washington Administrative Code.  Dkt. No. 21 ¶ 4. Lifestance also incorporated this prohibition in its code of conduct and employee handbook that Carver signed and agreed to before starting work.  Dkt. No. 20-1 at 9, 15, 18.

---

[1] Lifestance also formerly included Lifestance Health, LLC as a subsidiary, but it withdrew its registration to do business in Washington on December 15, 2020, and no longer exists.  *Id.* ¶ 4

Dr. Curtis Greenfield served as Lifestance's Regional Clinical Director for Washington and Carver's supervisor during Carver's tenure at the organization. Dkt. No. 21 ¶ 1, Dkt. No. 23-1 at 34. In late 2021 or early 2022, a patient named Hillary called Greenfield to lodge a complaint against Carver for making inappropriate comments and oversharing during their sessions. Dkt. No. 21-1 at 10; Dkt. No. 23-1 at 40, 44. In particular, Hillary complained that Carver disclosed too much personal information regarding his recovery from alcoholism. Dkt. No. 23-1 at 27. In response, Greenfield documented her complaint and referred her to another therapist. *Id.* Greenfield also coached Carver on the incident, and they "role-played appropriate self-disclosure." *Id.* at 28. He did not notify other Lifestance employees about this complaint, nor monitor Carver more closely after this incident. *Id.* at 27; Dkt. No. 22-1 at 59. This was the only patient complaint Greenfield received about Carver. Dkt. No. 22-1 at 57.

In August 2021, Doe sought treatment for depression and alcoholism from Lifestance. Dkt. No. 23-1 at 9–10. Defendants referred Doe to Carver. *Id.* Doe previously made "suicidal gestures" and struggled with self-harm and alcohol abuse. *Id.* at 8–9. Before her therapy started, she signed a release in which she acknowledged that she could refuse treatment and terminate therapy at any time, that "sexual intimacy is not appropriate in the context of a professional relationship and…must be reported to applicable state regulators," and that if she had concerns about how her provider is treating her, she should raise them to other Lifestance personnel. Dkt. No. 20-1 at 22–24; *see also* Dkt. No. 22-1 at 14, 21.

Carver and Doe began a consensual, romantic relationship in January 2022. Dkt. No. 22-1 at 18. Doe did not report Carver's conduct to state regulators at any point while she was his patient. Dkt. No. 23-1 at 17. Instead, they hid their romantic relationship from Lifestance. Dkt. No. 22-1 at 21. In one instance, Doe and Carver were sexually intimate at the Lifestance office after hours. *Id.* at 23. No one else was present at the office, there were no video cameras at the

facility, and Doe did not notify Lifestance personnel about the incident. *Id.* at 24, 60–61. At the end of February 2022, Doe stopped therapy with Carver out of concern that Lifestance would discover their relationship. *Id.* at 25. Doe did not ask Lifestance to refer her to another therapist; instead, she found another therapist a few months after terminating sessions with Carver. *Id.* at 26.

On Friday, July 15, 2022, the Washington Department of Health ("DOH") contacted Lifestance and notified Greenfield that a DOH complaint had been filed against Carver for having a romantic relationship with a patient. Dkt. No. 22-1 at 62, 74. Greenfield then contacted Megan Letts, Lifestance's Human Resources Director. *Id.* at 74. The same day, Letts and Greenfield met with Carver, who admitted to having a romantic relationship with a patient. *Id.* at 62–63, 76. Carver also admitted that he understood that the relationship was a violation of his license and Lifestance policies. *Id.* at 77–78. Lifestance immediately placed him on administrative leave that Friday and terminated his employment the following Monday, July 18, 2022. *Id.* at 76.

In December 2022, Carver ended his romantic relationship with Doe. *Id.* at 44. A month later, Doe attempted suicide and was hospitalized for her injuries. *Id.* at 45–46. Doe states that she tried to commit suicide because Carver "left out of nowhere[,] took my house…and took my community." *Id.* at 45.

**B.    Disputed Facts**

Plaintiff claims that disputed facts remain as to whether Carver presented a risk of harm to others, whether Lifestance knew or reasonably should have known about this risk, and whether Doe suffered emotional distress and injury from Carver's actions. First, the parties dispute the

content of Hillary's complaint to Lifestance.[2]  Doe, citing a text message from Carver, alleges that Hillary complained to Lifestance because he made comments about her body and tattoos during their sessions—and not only because Carver overshared about his struggles with alcoholism.  Dkt. No. 23-1 at 44 ("I commented on her chest tattoo as 'alluring[.]'"), Dkt. No. 24 at 8.  Second, Doe alleges that both Karlie Noth, a Lifestance receptionist, and Greenfield knew about Doe's relationship with Carver while Doe was still a patient at Lifestance, before the DOH report.  Dkt. No. 23-1 at 20; Dkt. No. 22-1 at 24–25, 31–32, 91; Dkt. No. 21 ¶ 5.  Additionally, the parties dispute whether Lifestance had a policy requiring front desk employees to report to management if they discover an inappropriate relationship between a therapist and patient.  Dkt. No. 23-1 at 37.  Doe also presents testimony from her expert witness, Dr. Richard Stride, concluding that Greenfield should have known that Carver might attempt to groom other patients based on Hillary's complaint.  *Id.* at 50–52.  Finally, the parties dispute whether Doe suffered injury from Carver's actions.  To support her claim, Doe points to her suicide attempt, hospitalization, and ongoing fears of men and "men in therapy."  *Id.* at 22, Dkt. No. 25-1 at 6.

## C.    Procedural History

On August 15, 2023, Plaintiff Doe filed this action in King County Superior Court.  Dkt. No. 1-1.  She alleges that Lifestance Health, Inc. is liable for negligent hiring, supervision, and retention.  *Id.*  Doe also asserts claims against all three Lifestance entities for breach of fiduciary duty, intentional infliction of emotional distress, and negligent infliction of emotional distress.  *Id.*  Finally, while not specifically plead, her complaint alleges throughout that Defendants are also

---

[2] The record is also unclear as to when Hillary's complaint was made.  Greenfield's declaration states that he made notes of the call on February 3, 2022, though the full date on the notes themselves is obscured.  Dkt. No. 21 ¶ 6, Dkt. No. 21-1 at 10 (Greenfield's collateral services note).  Carver's text message to Doe referencing the complaint and his counseling session with Greenfield was also dated February 4, 2022.  Dkt. No. 23-1 at 44.  Karlie Noth, a Lifestance receptionist, testified that she did not remember when Hillary complained to the office.  *Id.* at 41.  Regardless, neither party argues that the timing of Hillary's complaint—which the notes and text suggest occurred *after* Carver initiated the sexual relationship with Doe in January 2022—either supports or undermines the other party's claim.

liable for Carver's misconduct under *respondeat superior*. *Id.* Defendants removed the case to this Court based on diversity jurisdiction (Dkt. No. 1) before responding to the complaint (Dkt. No. 9). On October 31, 2023, the Court entered the parties' stipulated protective order. Dkt. No. 15. Then, at the close of discovery, Defendants moved for summary judgment. Dkt. No. 19. Defendants' motion is now ripe for the Court's consideration.

## II.   ANALYSIS

### A.   The Court Has Subject Matter Jurisdiction.

The Court possesses subject matter jurisdiction over this matter because the amount in controversy exceeds $75,000, and the parties are citizens of different states. 28 U.S.C. § 1332; Dkt. No. 1-1 ¶¶ 1 (Plaintiff is a Washington citizen), 67 (seeking compensatory damages, general damages, lost wages, "impairment of future wages", punitive damages, attorneys' fees, interests, and costs); Dkt. No. 6 at 1 (Lifestance Health, Inc. is a Delaware corporation while Lifestance Health, LLC was a Delaware corporation but no longer exists), 2 (Lifestance Health Group, Inc. is a Delaware corporation). "[F]ederal courts sitting in diversity apply state substantive law[.]" *Cuprite Mine Partners LLC v. Anderson*, 809 F.3d 548, 554 (9th Cir. 2015).

### B.   Summary Judgment Standard

To succeed on its motion for summary judgment, Lifestance must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it may have an impact on the case's outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a factual dispute or issue is genuine if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." *Id.*

In deciding a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the nonmoving party." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S.

133, 150 (2000).  However, if the moving party carries its burden under Rule 56, a plaintiff must do more to survive a summary judgment motion than deny the veracity of everything offered by the movant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (requiring the opponent of a summary judgment motion to "do more than simply show that there is some metaphysical doubt as to the material facts").  Rather, the plaintiff must go beyond the pleadings and "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 587.

The Court may only consider admissible evidence when ruling on a summary judgment motion.  *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e)).  That said, at this stage of litigation, the Court "do[es] not focus on the admissibility of the evidence's form.  [It] instead focus[es] on the admissibility of its contents."  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

## C.   The Court Grants Summary Judgment on Plaintiff's Vicarious Liability Claim.

The parties vigorously debate whether Plaintiff can successfully establish Lifestance's liability under a theory of vicarious liability, also known as *respondeat superior.*  They also disagree as to the applicable law and the role of vicarious liability in proving Plaintiff's negligence claims.  *See* Dkt. No. 19 at 6, 15–16; Dkt. No. 23 at 11–18 (requesting the Court hold Lifestance responsible under the *respondeat superior* theory).[3]  As detailed below, the Court concludes that

---

[3] The complaint does not separately assert a claim for vicarious liability or *respondeat superior*.  *See* Dkt. No. 1-1 at 7, 11, 13, 16, 17.  Rather, Doe alleges vicarious liability as an element of her negligent hiring, supervision, retention, intentional infliction of emotional distress, and negligent infliction of emotional distress claims.  As explained below, vicarious liability is not an element of any of these claims.  However, Defendants have asked for summary judgment on Plaintiff's vicarious liability theory as if it is a separate claim, and Plaintiff responded as if she properly pled this cause of action.  Therefore, while Doe has not expressly moved to amend the pleadings to conform with the parties' arguments or the evidence, to "facilitate decision on the merits, rather than on the pleadings or technicalities[,]" the Court will treat Plaintiff's vicarious liability theory as a separate claim.  *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015); *see also Ritchie Bros. Auctioneers (Am.) Inc. v. Naem Suid*, No. C17-1481-MAT, 2018 WL 1811353, *4 (W.D. Wash. Apr. 17, 2018) ("Plaintiff properly seeks to amend its pleading to conform to the parties' arguments[.]").

under current Washington state authority and as a matter of law, Carver acted outside the scope of his employment when he engaged in a romantic relationship with Doe.  Thus, the Court grants summary judgment on Plaintiff's vicarious liability claim.

1. <u>Washington law generally precludes vicarious liability based on intentional sexual misconduct.</u>

Washington law "imposes liability on an employer for the torts of an employee who is acting on the employer's behalf"—that is, the alleged torts must occur within the scope of employment for an employer to be liable under the theory of *respondeat superior*.  *Niece v. Elmview Grp. Home*, 929 P.2d 420, 425–26 (Wash. 1997).  The issue of whether an employee acted within the scope of employment is generally a fact-intensive inquiry.  *Nat'l Union Fire Ins. Co. of Pittsburg v. Aerohawk Aviation, Inc.*, 258 F. App'x 75, 78 (9th Cir. 2007) ("The issue of whether an employee acted within the scope of employment is a factual question to be decided by the trier of fact, but conduct that is clearly outside the scope of employment may be decided by the court as a matter of law."); *Amend v. Bell*, 570 P.2d 138, 140 (Wash. 1977) ("We recognize that scope of employment is essentially a factual question.").  To determine whether an employee's acts occurred in the course of his employment, a Court considers whether (1) "the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment," (2) acting by his employer's specific directions, or (3) "engaged at the time in the furtherance of the employer's interest."  *Dickinson v. Edwards*, 716 P.2d 814, 819 (Wash. 1986).  Washington courts "have emphasized the importance of the benefit to the employer" in this calculus.  *Id.*

According to Plaintiff, Carver's intentional, sexual misconduct as her therapist caused her injuries.  Typically, when an employee's "intentionally tortious or criminal acts are not performed in furtherance of the [employer's] business, the [employer] will not be held liable as a matter of

law even though the employment situation provided the opportunity for the [employee's] wrongful acts or the means for carrying them out." *Kuehn v. White*, 600 P.2d 679, 682 (Wash. Ct. App. 1979); *Leeper v. City of Tacoma*, No. 22-35502, 2023 WL 5665767, *2 (9th Cir. Sept. 1, 2023) (concluding that the district court did not err in granting summary judgment on a vicarious liability claim).  Defendants assert this general rule applies to Carver's conduct and precludes vicarious liability here.

        2.  <u>The Court applies state substantive law in diversity cases, and accordingly, finds that Carver acted outside the scope of his employment.</u>

Doe argues that the Court should apply the holding from *Simmons v. United States*, a case in which the Ninth Circuit found that a therapist acted within the scope of his employment when he engaged in a sexual relationship with his patient.  805 F.2d 1363 (9th Cir. 1986) (concluding that the district court did not err by applying *respondeat superior*).  The *Simmons* court concluded that even though the therapist's sexual misconduct was unauthorized, his tortious acts occurred in conjunction with his legitimate therapy duties, and thus, brought his conduct into the scope of his employment.  *Id.* at 553.

Washington courts have expressly rejected *Simmons* in both therapy and non-therapy contexts.  For example, in *Thompson v. Everett Clinic*, 860 P.2d 1054, 553 (Wash. Ct. App. 1993), the Washington Court of Appeals refused to apply *Simmons* to claims against a medical practice arising out of a medical doctor's tortious sexual assault during physical exams.  Citing *Kuehn*, the appellate court concluded that an employee's tort cannot be "attributable to the [employer] if it emanated from a wholly personal motive."  *Id.* at 1058 (holding that *Kuehn* provided "the better view" over *Simmons*).  *Thompson*'s holding has been repeatedly affirmed by subsequent Washington appellate courts.  *See, e.g.*, *Bratton v. Calkins*, 870 P.2d 981, 986 (Wash. Ct. App. 1994) (agreeing with the *Thompson* court that "[a] personally motivated sexual relationship

between a teacher and student does not further the employer's interest"); *LaValley v. Ritchie*, No. 42251–1–I, 1999 WL 359098, *3 (Wash. Ct. App. 1999) ("The fact that [the therapist's] conduct occurred in a mental health setting and may therefore be characterized as negligent, however, is not a significant distinction between his conduct and the assault by the doctor in *Thompson*."); *see also Peck v. Siau*, 827 P.2d 1108, 1109 (Wash. Ct. App. 1992), *review denied*, 838 P.2d 1142 (Wash. 1992) (noting the apparent reason that plaintiff did not assert a *respondeat superior* claim was that the employee's sexual conduct was not in the scope of employment).

This Court recognizes that *Simmons* has not been abrogated. *See In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) (holding that a published Ninth Circuit decision constitutes binding authority unless and until "overruled by a body competent to do so"). But the Court exercises diversity jurisdiction in this matter, and thus, applies state substantive law. *Cuprite Mine Partners LLC*, 809 F.3d at 554. "When interpreting state law, we are bound to follow the decisions of the state's highest court." *Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir. 2002). "When the state supreme court has not spoken on an issue, we must determine what result the court would reach based on state appellate court opinions, statutes and treatises." *Id.*; *see also PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812 (9th Cir. 2018) (holding that federal courts should "follow a published intermediate state court decision regarding [state] law" unless they are "convinced that the [state] supreme court would reject it"). *See generally Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020) (noting that "the outcome of a case in federal court should generally be 'substantively the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court'").

Washington state appellate courts have been explicit in their criticism of *Simmons*. Indeed, ignoring Washington precedent and applying the doctrine of *respondeat superior* to this case would "significantly affect" the litigation's outcome. *Sonner*, 971 F.3d at 839. As such, the Court

declines to apply *Simmons* to this case.[4]   The mere fact that Carver's employment with Lifestance gave him the avenue for his tortious acts does not render Defendants vicariously liable for his conduct.   Instead, the Court considers Carver's motivation for starting a romantic relationship with Doe.   *Thompson*, 860 P.2d at 1058.

Here, there is no genuine dispute as to whether Carver was personally motivated when he started a relationship with Doe.   The parties do not disagree that Doe and Carver knew their romantic relationship was prohibited, and nonetheless actively hid it from Lifestance.   Dkt. No. 23-1 at 16–17, 19–20.   When Lifestance discovered the relationship, Carver admitted to the misconduct and recognized that it violated ethics regulations and Lifestance policies.   Dkt. No. 22-1 at 77–78.   And Plaintiff does not argue that Carver dated her for any other reason but for his own gratification.[5]   *See* Dkt. No. 22-1 at 21 (Doe testified that Carver gave her "the impression that he knew what he was doing, and he told me that I was worth any risk of possible discipline…I was special enough").   Therefore, the Court finds that Carver acted outside the scope of his employment as a matter of law and dismisses Plaintiff's vicarious liability claim.

**D.    The Court Denies Summary Judgment on Plaintiff's Negligent Supervision and Retention Claims.**

Defendants incorrectly argue that because Plaintiff cannot establish vicarious liability, her negligent supervision, retention, and hiring claims fail.   Dkt. No. 19 at 16.   Plaintiff responds that her negligence claims are brought in the alternative, in the event the Court finds Carver acted

---

[4] Moreover, *Simmons* is also distinguishable on its facts.   In that case, the Ninth Circuit affirmed the district court's finding that it was impossible to separate the therapist's misconduct from his legitimate treatment activities, which amounted to "an abuse of a trusting dependency relationship …which had evolved during [Plaintiff's] five years of successful therapy…"   *Simmons*, 805 F.2d at 1371.   Here, Carver and Doe intentionally ended their therapy relationship within approximately six weeks of the beginning of their sexual relationship.

[5] Even if Doe did claim that Carver acted altruistically and believed a romantic relationship with him would improve her mental health, Washington courts have dismissed similar arguments.   *LaValley*, 1999 WL 359098, at *3 ("It is certainly possible that Ritchie genuinely believed LaValley needed a loving relationship more than she needed therapy.   But even though his motive may have been benign, it was still wholly personal[.]").

outside the scope of his employment.  Dkt. No. 23 at 18.  Plaintiff is correct that liability under these theories is analytically distinct from vicarious liability.  *Niece*, 929 P.2d at 426.

To successfully assert a negligent supervision claim, Doe must show (1) Carver acted outside the scope of his employment, (2) he presented a risk of harm to others, (3) Lifestance knew, or in the exercise of reasonable care, should have known about this risk, and (4) Lifestance's failure to supervise was the proximate cause of Doe's injury.  *See Niece*, 929 P.2d at 426; *Anderson v. Soap Lake Sch. Dist.*, 423 P.3d 197, 208 (Wash. 2018).  Meanwhile, a negligent retention claim requires Doe to demonstrate that Lifestance knew or, in the exercise of ordinary care, should have known about Carver's unfitness during his employment.  *Anderson*, 423 P.2d at 206.  As opposed to negligent supervision, a "plaintiff may bring [her] negligent hiring and retention claims…regardless of whether [the tortfeasor] was acting within or outside the scope of his employment."  *Preston v. Boyer*, No. C16-1106-JCC-MAT, 2019 WL 982041, *4 (W.D. Wash. Feb. 7, 2019), *report and recommendation adopted*, No. C16-1106-JCC, 2019 WL 974623 (W.D. Wash. Feb. 28, 2019) (concluding that the Washington Supreme Court "makes clear that the scope of employment is not a factor to consider with negligent hiring and retention claims"); *see also Anderson*, 423 P.3d at 356 (omitting scope of employment as a factor to consider with negligent hiring and retention claims).

Here, construing the facts in Doe's favor, Doe sufficiently raises a dispute of material fact as to whether Carver posed a risk of sexual misconduct and whether Lifestance knew or reasonably should have known about this risk.

    1.   Plaintiff's evidence is admissible under Federal Rule of Civil Procedure 56.

Doe contends that the Court should deny summary judgment on her negligent supervision and retention claims because the complaint from Carver's former patient, Hillary, reasonably put

1  Lifestance on notice that Carver may behave unethically with other patients.[6]  First, Doe alleges

2  that Hillary complained to Greenfield that Carver overshared during their sessions, made

3  inappropriate comments, and specifically, described Hillary's "chest tattoos" as "alluring."  The

4  record suggests that Hillary complained to Greenfield while Carver was still seeing Doe as a

5  patient.  Dkt. No. 21-1 at 10.  Doe found out about Hillary's complaint, Greenfield's subsequent

6  coaching session with Carver, and Carver's tattoo comment because he told her via text message.

7  Dkt. No. 23-1 at 20, 44.  Plaintiff also offers Dr. Stride's expert testimony, which opines that

8  Carver's oversharing was a means of grooming, and as his supervisor and another trained therapist,

9  Greenfield should have been aware that Carver tended to behave inappropriately towards patients

10  based on the incident with Hillary.  Dkt. No. 23-1 at 48–49.  Additionally, Dr. Stride concludes

11  that had Greenfield held regular supervisory meetings with Carver, as required by state regulations,

12  or monitored him more closely after Hillary's complaint, he would have noticed Carver's attempts

13  to groom his patients before Doe started therapy with Carver.  *Id.* at 49.

14         Plaintiff also argues that Karlie Noth, a Lifestance receptionist, knew about Carver and

15  Doe's relationship, and that Noth's knowledge can be imputed to Lifestance.  Specifically, Plaintiff

16  testified that she stopped therapy at Lifestance because Carver told her that Noth knew about their

17  relationship, so she terminated Carver as her provider to avoid further discovery.  Dkt. No. 23-1 at

18  18.  Plaintiff also testified that she called Noth while Noth was working at Lifestance, and that

19

20

21  _____

[6] Plaintiff also argues that Lifestance had notice from an unrelated, 2020 incident at its Illinois office, where another
22  therapist engaged in a romantic relationship with a patient.  Dkt. No. 23 at 23, *see also* Dkt. No. 23-1.  This fact is
immaterial.  "Washington courts have 'require[d] a showing of knowledge of the dangerous tendencies of the
23  *particular employee.*'"  *Anderson*, 423 P.3d at 210 (quoting *Niece*, 929 P.2d at 427–28).  Lifestance's general
awareness that some therapists may engage in sexual misconduct does not satisfy the requisite knowledge element of
negligent retention or supervision claims.  And as the Washington Supreme Court has noted, "[w]hen based on *general*
24  *dangers*,…a claim that an employer should have supervised its employee when he or she was acting outside the scope
of employment collapses into a negligent protection claim."  *Id.* (emphasis added).

Noth promised she "would keep it quiet if [Carver] stopped seeing me as a patient." *Id.* Finally, Doe testified that she believed Greenfield also knew about their relationship. *Id*. at 20.

In their reply brief, Defendants contend that Doe fails to set forth enough facts showing that there is a genuine issue for trial because Doe bases her claims on inadmissible hearsay, which cannot create a fact issue on summary judgment. *See* Fed. R. Evid. 802 (hearsay rule), 805 (hearsay within hearsay rule); Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). Lifestance is correct that "a trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr*, 285 F.3d at 773. That said, Doe need only produce evidence that satisfies Rule 56—which provides for a more lenient admissibility standard than at trial. *See Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001) (describing the Rule 56's admissibility requirements). "At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021). For instance, "[i]f the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment." *Id.*

Such is the case here. The Court agrees that Plaintiff relies on evidence that could constitute hearsay. *See* Fed. R. Evid. 801(c) (defining hearsay as "a statement that the declarant does not make while testifying at the current trial or hearing; and a party offers in evidence to prove the truth of the matter asserted in the statement") (cleaned up). But ultimately, the content of these conversations could be presented at trial in an admissible form or under a hearsay exception. For example, Carver's text to Doe constitutes hearsay within hearsay, but the content of the message—Hillary's complaint about Carver's purported comments about her body—could

be admissible at trial through Carver's or Greenfield's live testimony. This information could also potentially be admissible as non-hearsay if offered to show notice to Lifestance, not "to prove the truth of the matter asserted." Fed. R. Evid. 801(c); *Tabbert v. Howmedica Osteonics Corp.*, No. 2:15-CV-00039-SMJ, 2017 WL 10316435, *6 (E.D. Wash. Oct. 18, 2017) (citing *Hiram v. United States*, 354 F.2d 4, 7 (9th Cir. 1965)). Similarly, hearsay issues regarding Doe and Carver's conversation about Noth's alleged knowledge or Doe's phone call with Noth could be cured at trial by calling Noth, who has been deposed, as a live witness. Thus, while the Court offers no opinion on the ultimate admissibility of any evidence at trial, Plaintiff's evidence is admissible for the purposes of deciding the motion for summary judgment.

     2. <u>Doe raises genuine issues of material fact regarding Carver's risk of harm and Lifestance's awareness of this risk.</u>

     Drawing all reasonable inferences in the light most favorable to Plaintiff, Doe has sufficiently demonstrated that there are genuine issues of material fact relating to her negligent supervision and retention claims. First, Hillary's complaints about Carver, contextualized by Dr. Stride's expert testimony, could allow a reasonable jury to conclude that Carver showed a risk of harm. The jury could reasonably conclude that the incident with Hillary constitutes an example of Carver behaving improperly with a patient and that Greenfield's lax monitoring after this complaint allowed Carver the opportunity to groom another patient. Second, there is a genuine dispute of material fact regarding whether the Hillary incident put Greenfield, and thus Lifestance, on notice that Carver may act unprofessionally with other patients. Again, a reasonable fact finder could find credible Dr. Stride's conclusions regarding Greenfield's awareness and responsibilities. And a jury could reasonably conclude that Hillary's complaint may not be a red flag to a layperson, but to a trained, mental health care provider like Greenfield, Carver's oversharing and inappropriate comments provided sufficient notice. The Court cannot assess the credibility of this

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

evidence in deciding a motion for summary judgment.  *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

Finally, the parties' factual dispute as to whether Noth knew about the relationship and whether Lifestance had a policy requiring Noth to report that information to the organization also precludes summary judgment on the negligent supervision and retention claims.  Relying on deposition testimony from Lifestance's HR Director, Doe argues that "there was a company policy that required front desk employees of Lifestance to report to management if they come aware of an inappropriate relationship between a therapist and a patient."  Dkt. No. 23 at 4, Dkt. No. 23-1 at 37.  Lifestance responds that even if Noth was aware of the relationship, she was a non-manager whose knowledge cannot be imputed to Defendants.  Dkt. No. 19 at 12.

Whether Noth's knowledge can be imputed to Lifestance depends on if she had a duty to report Carver's misconduct to their employer, not simply whether she was a manager at Lifestance. *Messenger v. Whitemarsh*, 462 P.3d 861, 869 (Wash. Ct. App. 2020) ("[A]n employee's knowledge of their fellow employee's characteristics of unfitness cannot be imputed to the employer unless the employee has a duty to report such knowledge."); *Peck*, 827 P.2d at 1111–12 (holding that a teacher's knowledge of a fellow educator's inappropriate contact with a student would not be imputed to the school district because the teacher held no supervisory authority over the educator or any administrative responsibilities for the district).  In their briefs, Defendants do not address Doe's claim that a policy exists that would have required Noth to report the relationship to Lifestance, nor do they submit evidence demonstrating otherwise.

//

//

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 16

1

2     As such, for the reasons above, the Court finds that genuine issues of material fact prevent

3     summary judgment on Doe's negligent supervision and retention claims.  Defendants' motion is

4     therefore denied.

5     **E.      The Court Grants Summary Judgment on the Negligent Hiring Claim.**

6             To survive summary judgment on her negligent hiring claim, Doe must show a genuine

7     dispute of material fact as to whether Lifestance knew or, in the exercise of ordinary care, should

8     have known about Carver's unfitness at the time it hired him, and whether Carver proximately

9     caused the resulting injuries.  *See Carlsen v. Wackenhut Corp.*, 868 P.2d 882, 886 (Wash. Ct. App.

10    1994).  "The difference between negligent hiring and negligent retention is the time at which the

11    employer's negligence occurs."  *Peck*, 827 P.2d at 1110.

12            Plaintiff fails to meet her burden on this claim because there is no genuine dispute as to

13    whether Lifestance exercised ordinary care in hiring Carver and could not have reasonably known

14    at the time of hiring that he may behave unprofessionally in the future.  The record shows that

15    Lifestance screened Carver through a credentialing process before hiring him, required Carver to

16    agree to its ethics policies, and provided annual compliance training.  Dkt No. 20 ¶¶ 5, 6 ("Carver

17    was credentialed with no red flags of any kind."); Dkt. No. 20-1 at 4–6 (Carver's credentialing

18    report), 8–9 (Lifestance employee handbook, which bars romantic relationships between

19    Lifestance employees), 11–13 (Lifestance code of conduct), 15–20 (Carver's signed employee

20    agreement).  The prohibition on romantic affairs with patients is also a fundamental ethical rule in

21    Carver's profession, which Carver had been trained on to acquire his license.  Dkt. No. 21 ¶ 4;

22    WASH. ADMIN. CODE § 246-924-358(2) ("A psychologist shall never engage, or attempt to engage,

23    in sexual misconduct with a current patient, client, or key party, inside or outside the health care

24    setting.").  Doe submits no evidence to the contrary and thus cannot satisfy her burden of

1

2

persuasion at trial.[7]  *See* Dkt. No. 23 at 23.  Accordingly, the Court grants summary judgment on Plaintiff's negligent hiring claim.

3

4

**F.    The Court Grants Summary Judgment on Plaintiff's Claims for Breach of Fiduciary Duty, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress.**

5

6

7

8

9

10

11

12

13

14

15

16

In the complaint, Plaintiff alleges harm from Defendants' breach of fiduciary duty, intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED").  Dkt. No. 1-1 at 14–17.  In their briefs supporting the summary judgment motion, Defendants detailed the required elements for these causes of action and argue that based on the record, there is no genuine dispute of material fact relating to Plaintiff's breach of fiduciary duty, IIED, and NIED claims.  Defendants support their arguments with specific citations to depositions, affidavits, records, and pleadings.  *See* Dkt. No. 19 at 23–26.  As such, Defendants met their Rule 56(c) burden to show that Doe lacks essential evidence to support her case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (describing the burden the party moving for summary judgment bears).  The burden then shifts to Doe to present specific, probative evidence "that there is a genuine issue for trial" and not merely "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87.

17

18

19

Doe fails to carry her burden on her claims of breach of fiduciary duty, IIED, and NIED. Her opposition to Defendant's summary judgment is wholly unresponsive to Lifestance's arguments and does not set forth specific facts for trial on these claims.  Plaintiff fails to even

20

21

22

23

24

---

[7] In Plaintiff's response to the motion for summary judgment, she seems to concede that the negligent hiring claim initially asserted in her complaint fails.  Dkt. No. 23 at 23 ("Here, the plaintiff's claim rests on a negligent retention argument, not a negligent hiring one.").  Either by Plaintiff's concession or her failure to meet the burden of proof, this claim must be dismissed.

acknowledge that these claims were asserted in the complaint.[8]  It is not the Court's task "to scour the record in search of a genuine issue of triable fact.  We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).   As a result, Defendants' motion is granted, and the Court dismisses Plaintiff's claims for breach of fiduciary duty, intentional infliction of emotional distress, and negligent infliction of emotional distress.

**G.   The Court Dismisses Defendants Lifestance Health, LLC and Lifestance Health Group, Inc. from this Case.**

Doe claims that Lifestance Health, LLC and Lifestance Health Group, Inc. are also liable for Carver's conduct.  However, there is no genuine dispute that Carver was only employed by Lifestance Health, Inc.  Dkt. No. 20 at ¶ 3.  It is also undisputed that Lifestance Health, LLC, withdrew its registration to do business in 2020—before Carver's alleged misconduct—and no longer exists.  *Id.* at ¶ 4.  Plaintiff also fails to submit specific facts showing Lifestance Health Group, Inc.'s connection with Carver's acts, especially as it was not Carver's employer.  *Id.*

Therefore, Doe ultimately fails to raise a genuine dispute of material fact as to Defendants Lifestance Health, LLC and Lifestance Health Group, Inc.'s involvement with Carver and Doe. The Court dismisses these two defendants from this action.

//

//

//

---

[8] Lifestance argues that these arguments should be deemed conceded or waived. Dkt. No. 24 at 6.  While Plaintiff's omissions prevent her from satisfying her burden and the Court must dismiss these claims, the Court will not consider these claims completely abandoned.  "At most, a failure to oppose arguments in support of summary judgment operates as a waiver of those arguments on appeal"—not in the trial court.  *Howse v. Dep't of Corr.*, No. C16-5939 BHS, 2018 WL 4931571, *4 n.1 (W.D. Wash. Oct. 11, 2018); *see also Panagacos v. Towery*, 692 Fed. App'x 330, 333 (9th Cir. 2017).

### III.   CONCLUSION

Accordingly, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's vicarious liability, negligent hiring, breach of fiduciary duty, intentional infliction of emotional distress, and negligent infliction of emotional distress claims.  Dkt. No. 19.  The Court DENIES summary judgment on the negligent supervision and negligent retention claims.  *Id.*

Dated this 8th day of October, 2024.

Kymberly K. Evanson
United States District Judge